OPINION
Defendant-appellant, James L. Teasley, Sr., appeals from final judgments of the Franklin County Court of Common Pleas finding him guilty of one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), one count of unlawful possession of a dangerous ordinance, in violation of R.C. 2923.17, and eight felony and two misdemeanor counts of receiving stolen property, in violation of R.C.2913.51.
Appellant's convictions arise out of the Columbus Police Department's ("CPD") investigation into a theft ring believed to be operating in and around Columbus, Ohio. Based upon information received from a confidential informant, CPD obtained search warrants for approximately fifteen properties. The searches began in February 1998, with two storage units located in a self-storage facility on Kinnear Road in Columbus, Ohio. One of the storage units searched was rented by the father of co-defendant George Rackham and the other unit was rented by co-defendant Russell Parker. Shortly thereafter, CPD searched the residences of co-defendants Rackham and Ralph Cossin. In July 1998, CPD searched the residences of appellant; appellant's sons, James L. Teasley, Jr., a.k.a. Crow, and John L. Teasley; and a four-hundred-acre farm located in Greenup County, Kentucky that was jointly owned by appellant's wife, Alice Teasley, and son Crow. Also in July 1998, CPD searched several residential rental properties in Columbus, Ohio owned by appellant.
In September 1998, the Franklin County Grand Jury returned a one-hundred-four-count indictment against appellant and several co-defendants in case number 98CR-5155. The indictment charged appellant with one count of engaging in a pattern of corrupt activity, twelve counts of receiving stolen property, one count of possessing a dangerous ordinance, one count of possessing cocaine with a firearm specification, and eight counts of theft. In December 1998, the grand jury returned a second indictment against appellant charging him with one count of receiving stolen property in case number 98CR-6988. In December 1999, the grand jury returned a third indictment against appellant charging him with five counts of receiving stolen property in case number 99CR-6851. The three cases were joined for trial.
Before trial, seven of the twelve counts of receiving stolen property charged in case number 98CR-5155, and all eight of the theft counts charged in that case were dismissed. The five receiving stolen property counts charged in case number 99CR-6851 were then substituted for five of the theft counts which had been dismissed in case number 98CR-5155, and case number 99CR-6851 was dismissed. In addition, all charges pending against appellant were severed from those pending against all co-defendants.
Beginning on August 28, 2000, appellant was tried before a jury on ten counts of receiving stolen property, one count of possessing cocaine with a firearm specification, one count of unlawfully possessing a dangerous ordinance, and one count of engaging in a pattern of corrupt activity in case number 98CR-5155, and a single count of receiving stolen property in case number 99CR-6988. On September 8, 2000, the jury returned verdicts finding appellant guilty of one count of receiving stolen property in case number 98-6988, seven felony and two misdemeanor counts of receiving stolen property, one count of unlawfully possessing a dangerous ordinance, and one count of engaging in a pattern of corrupt activity in case number 98CR-5155, and not guilty of one count of receiving stolen property and one count of possessing cocaine in case number 98CR-5155. On October 23, 2000, the trial court sentenced appellant to a combined, definite sentence of sixteen years of incarceration.[1] Appellant appeals from his convictions and sentence assigning the following errors:
ASSIGNMENT OF ERROR I
 The trial court erred when it entered judgment against Appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
ASSIGNMENT OF ERROR II
 The trial court commits reversible error by granting judgment against Appellant when it lacked subject matter jurisdiction to do so on the charges of receiving stolen property in the State of Kentucky.
ASSIGNMENT OF ERROR III
 The trial court commits reversible error by not declaring a mistrial when the jury becomes hopelessly hung and then engages the jury in a dialogue as to which juror(s) think further deliberation will not produce a verdict, in violation of Appellant's right to a fair trial under the State and Federal Constitutions.
ASSIGNMENT OF ERROR IV
 Appellant's right to a fair trial is violated under the State and Federal Constitutions and under Ohio Rule of Evidence 403(A), when the state is permitted to introduce into evidence inflammatory and irrelevant information and exhibits, where the probative value of such information and exhibits does not outweigh the prejudicial effect on the jury.
ASSIGNMENT OF ERROR V
 The trial court commits reversible error by shifting the burden of proof from the state to the defendant regarding a misleading tax return admitted into evidence, to convince the jury that Appellant did not make enough money to account for all of the personal property allegedly owned by him, and that real property he owned or sold was not transferred for its true value in an attempt to hide profits from illegal activity, when such evidence was clearly intended to mislead the jury, in violation of Appellant's right to a fair trial under Article 1, Section 10 of the Ohio Constitution and under the Fifth and Fourteenth Amendments to the United States' Constitution.
ASSIGNMENT OF ERROR VI
 An accused's due process rights are violated under Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, when the trial court abuses its discretion in giving Appellant consecutive and maximum sentences without property considering the Factors set forth in Ohio Revised Code §§ 2929.12 and 2929.14.
ASSIGNMENT OF ERROR VII
 The trial court commits reversible error by sentencing Appellant to consecutive sentences in violation of R.C. § 2953.08(C).
For organizational purposes we will address appellant's assignments of error out of order, beginning with his fourth assignment of error. Appellant's fourth assignment of error asserts that the trial court erred in permitting the state to present evidence of the vast quantities of personal property found during the police investigation which the state could not show to be stolen.
Admission of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27. An abuse of discretion connotes more than a mere error of judgment; it implies a decision is without a reasonable basis, and one that is clearly wrong. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Because defense counsel largely failed to object to the state's presentation of evidence of personal property found during the investigation that the state could not show to be stolen, we must review the admission of that evidence under the plain error standard. State v. Robertson (1993), 90 Ohio App.3d 715, 728. In order to establish plain error, a defendant must show that the error alleged so adversely affected his substantial rights that the fairness of the guilt determining process was undermined. State v. Swanson (1984),16 Ohio App.3d 375, 377; City of Whitehall v. Wildi (2002), Franklin App. No. 01AP-762; Crim.R. 52(B). Plain error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. State v. Tichon (1995),102 Ohio App.3d 758, 767.
Our review of the transcript reveals that the trial court did permit the state to present evidence of large quantities of personal property which CPD found during its investigation, but which could not be shown to be stolen. The state set the stage for the presentation of this evidence during the examination of its first witness, CPD Detective Ron Cordial. After Detective Cordial testified that "hundreds" of items were found during the search of the two storage units on Kinnear Road, the following exchange took place between the lead prosecutor and Detective Cordial:
 Q. How do you go about determining whether a piece of property is stolen or not?
 A. Basically if the victim of the place it was stolen from, the person or persons, companies, or whatever filed a police report, hopefully in their records they record serial numbers or identifying marks on their items. Unfortunately a lot of people don't. The ones we got hits on are the ones that people record or are recorded by the State of Ohio as VIN numbers or by Harley Davidson or Honda or whatever.
 Q. Let me stop you there. Let's start off with like a weed eater. I have got a weed eater. It's stolen and I filled out a police report that I have a stolen green Toro weed eater. That is all that is filled out. I don't write down the serial number. How would you know or would you ever be able to tell if you found that that it's [mine].
A. No, sir.
* * *
 Q. Those items that were recovered [during the course of the investigation which lead to defendant being on trial] that didn't have serial numbers on it or that had serial numbers on it but the victim didn't record it, were you able to link any of those up to the stolen items belonging to those victims?
A. No sir. [Emphasis added. Tr. 66-67, 69-70.]
This line of questioning conveyed the clear message to the jury that all of the property found during the investigation was stolen, and that the state's inability to prove that it was stolen should be disregarded as a mere tracing problem. In addition, the lead prosecutor's habit of referring to property that the state could not show to be stolen as "recovered" property, a practice that he continued throughout the trial, reinforced the improper inference that all of the property found during the investigation was stolen. Having improperly suggested that all of the property found during the investigation was stolen, the state set out to show the jury just how much property had been found during the investigation, without any regard for whether it could show that the property was, in fact, stolen.
The state began this presentation with Detective Cordial's testimony regarding the search of the farm in Kentucky. After listing a number of items found on the Kentucky property which were subsequently determined to be stolen, Detective Cordial went on to testify that police had also found an unidentified truck, nineteen or twenty weed eater type line trimmers, numerous motorcycles, and motorcycle parts "piled up like * * * trash" on the property. Although the state presented no evidence that any of the weed eaters, motorcycles, or motorcycle parts were stolen, the prosecutor sought to add to the impression that the items were stolen through the following exchange with Detective Cordial:
 Q. Were you able to determine at all if either of these items [the weed eaters and the stuff in the pile] were, the weed eaters were stolen?
A. We were not.
Q. So you can't say whether or not they were stolen?
A. That's correct. [Tr. 107.]
The state next presented evidence of personal property found during the searches of several of appellant's Columbus rental properties. CPD Detectives Dan Cheadle and Terry Black, who had participated in several of the searches conducted during the investigation, were asked to read from police inventories compiled during the search of two garages located at 1025 Michigan Avenue in Columbus, Ohio. The first of the inventories, which was read by Detective Cheadle, listed twenty-nine items that were found in the first garage, including six chainsaws, an air compressor, a portable generator, two televisions, a videocassette recorder, and several power tools. The second inventory, which was read by Detective Black, listed one hundred nine separate items found in the second garage, including numerous home appliances, toolboxes, power tools, hand tools, stereo equipment, and a group of twelve antiques. Of the one hundred thirty-eight items listed on the two inventories, only thirteen, a toolbox and the twelve antiques, were items alleged to have been stolen in any of the crimes for which appellant was on trial. More importantly, however, the state presented absolutely no evidence that any of the remaining one hundred twenty-five items were stolen. Nonetheless, all of the items listed on both inventories were read to the jury and both were admitted into evidence in their entirety.
After Detective Black finished reading the list of items from the inventory of the second Michigan Avenue garage, the state asked Detective Black to identify a series of photographs depicting items found in the two Michigan Avenue garages. Black identified seven photographs that depicted piles of personal property found inside the two garages. Again, however, the state presented no evidence that any of the items depicted in the photographs were stolen. These photographs were also admitted into evidence.
The state next asked CPD Detective Steven Roberts to identify a police inventory compiled during the search of a garage located at 50 East Barthman Avenue in Columbus, Ohio. Detective Roberts identified the inventory, which listed thirty-five separate items, including several wooden cabinets, a variety of automobile parts, and a 1969 Chevrolet Camaro. Although this inventory was identified and subsequently admitted into evidence, the state presented no evidence that any of the items on the inventory, except the Camaro, were stolen.
Finally, the state asked Detective Roberts what CPD had found when it searched a garage located at 1081 Oregon Avenue in Columbus, Ohio. In response, Detective Roberts testified that the garage had been "just filled with tools, body parts, [and] vehicle motors" and that a bag containing $7,226 in cash, a motorcycle, and several motor vehicle identification ("VIN") plates, motor vehicle door plates, and motor vehicle titles had been found in the Oregon Avenue garage. Detective Roberts then identified three photographs depicting the cash, the motor vehicle VIN plates, door plates and titles, and the motorcycle which were found in the Oregon Avenue garage. The state failed, however, to present evidence that even a single one of the items found in the garage was stolen. In fact, it was later revealed that all of the property found in the Oregon Avenue garage had been returned to the tenant who was leasing the property from appellant.
Evid.R. 402 provides generally that relevant evidence is admissible and evidence that is not relevant is inadmissible. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Finally, pursuant to Evid.R. 403(A), even relevant evidence is inadmissible where "its probative value is substantially outweighed by the danger of unfair prejudice." Under these rules, the evidence of property found during the investigation which could not be shown to be stolen was plainly inadmissible.
The property that the state could not show to be stolen had no relevance to any issue of consequence in appellant's trial. The existence of this property did not make it more or less likely that appellant received other stolen property, engaged in a pattern of corrupt activity, possessed cocaine, or unlawfully possessed a dangerous ordinance. The state argues, however, that the evidence of the property found during the investigation that could not be shown to be stolen constituted evidence of "other bad acts," and was thus relevant under Evid.R. 404(B)[2] to show that appellant engaged in a pattern or scheme of dealing in stolen property. This argument is troubling in that it presupposes that the property at issue is stolen. The state appears to have confused its own conviction that all of the property found during the investigation is stolen, with the existence of actual evidence that proved the property is stolen. Appellant's mere possession of, proximity to, or control over personal property that the state cannot show to be stolen, does not constitute a "bad act" for purposes of Evid.R. 404(B). Simply, it is not a "bad act" to possess or control large amounts of unexplained personal property in the absence of any evidence that the property is stolen.
Further, the admission into evidence of all of the property found during the investigation that could not be shown to be stolen was unfairly prejudicial in the extreme. The evidence portrayed appellant as an individual who was surrounded by mountains of stolen property even though the state had no evidence that the vast majority of the property was stolen. See State v. Smith (1988), Stark App. No. 7399 (holding that evidence of two cigarette lighters, a gold ring, and five women's watches that were found in the appellant's possession but could not be shown to be stolen, were improperly admitted during the defendant's trial on two counts of robbery arising out of two purse snatchings, as the evidence improperly suggested that defendant had committed a third uncharged purse snatching).
Having reviewed the transcript and exhibits of appellant's trial, we find that the cumulative impact of the admission of all the evidence of personal property found during the investigation which the state could not show to be stolen undermined the fairness of appellant's trial. The jury could not fairly determine appellant's guilt or innocence of the crimes with which he was charged after having been improperly led to believe that appellant was surrounded by vast quantities of stolen property. The trial court's admission of all of the evidence of property found during the investigation which could not be shown to be stolen constituted plain error. Accordingly, appellant's convictions on all counts must be reversed and he must be granted a new trial.
Appellant's fourth assignment of error is sustained.
We now turn to appellant's first assignment of error. Although appellant's first assignment of error purports to challenge appellant's convictions for receiving stolen property, and engaging in a pattern of corrupt activity as against both the sufficiency and weight of the evidence, all of the arguments presented thereunder challenge the sufficiency, rather than the weight of the evidence.
 In reviewing a claim that a criminal conviction is against the sufficiency of the evidence, an appellate court must determine whether the evidence presented at trial and viewed in a light most favorable to the prosecution would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
Appellant's argument that there is insufficient evidence to support his ten convictions for receiving stolen property is less than clear. It appears, however, that appellant is arguing that the state failed to establish that he was in actual possession of the stolen property that he was convicted of receiving.
Appellant was tried on eleven counts of receiving stolen property involving the following stolen property: (1) a toolbox and miscellaneous tools; (2) a second toolbox and miscellaneous tools; (3) a group of twelve antiques; (4) a 1969 Chevrolet Camaro; (5) a 1990 Jeep Wrangler; (6) a Bobcat brand skid loader; (7) a 1994 Chevrolet pickup truck; (8) a Coachman travel trailer; (9) a John Deere lawn tractor; (10) a Yamaha ATV; and (11) a Honda ATV. Appellant was convicted on all of the counts except the one involving the Chevrolet Camaro.
Initially, appellant is incorrect in asserting that the state presented no evidence of his actual possession of any of the ten stolen items which he was convicted of receiving. The state did present evidence of appellant's actual possession of the Chevrolet pickup truck and the two ATVs. Specifically, several law enforcement officers testified that they observed appellant driving the Chevrolet pickup truck when they arrived at the Kentucky farm to conduct their search. With regard to the ATVs, one of the individuals who stole the ATVs testified that, after he and his accomplice stole the ATVs, they sold them to appellant who took physical possession of them.
Appellant is correct, however, that the record contains no evidence of his actual possession of any of the remaining seven items. We nonetheless conclude that appellant's receiving stolen property convictions involving these items are supported by sufficient evidence.
It is well-established that actual possession of stolen property need not be shown in order to obtain a conviction for receiving stolen property. State v. Hankerson (1982), 70 Ohio St.2d 87, 90-91. A conviction for receiving stolen property may rest on constructive possession of the property. Id. at 91. Constructive possession exists where an individual has dominion or control over property that is not in his actual possession. Id.
Here, the state presented sufficient evidence to allow the jury to find that appellant was in constructive possession of the stolen items that he was convicted of receiving. One of the toolboxes was found in a detached garage behind appellant's home. The jury could reasonably infer that appellant had dominion and control over the personal property in his own garage. The second toolbox and the antiques were found in two detached garages located on a residential rental property owned by appellant. The tenant who rented the residential property testified that the garages were not part of the leased premises, that appellant had access to the garages, and that she had seen appellant enter and leave the garage on several occasions. This testimony is also sufficient to permit the jury to infer that appellant had dominion and control over the items in the garages. The remaining items, the Jeep, Bobcat, travel trailer and John Deere lawn tractor were found on the Kentucky farm. Although the evidence indicated that the farm was owned by appellant's wife and son, the evidence also established that appellant had unfettered access to the farm, was familiar with the layout of the farm and kept animals on the property. This evidence, together with the evidence that appellant was driving the stolen Chevrolet pickup truck found on the farm, was sufficient to permit the jury to conclude that appellant had dominion and control over not only the pickup truck, but all of the personal property found at the farm.
Appellant next argues that his conviction for engaging in a pattern of corrupt activity is not supported by sufficient evidence in that the evidence does not establish the existence of an "enterprise." The statutory provisions relevant to appellant's conviction for engaging in a pattern of corrupt activity provides, in pertinent part, as follows:
R.C. 2923.32(A)(1):
 (A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *.
R.C. 2923.31(C):
 (C) "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
R.C. 2923.31(E):
 (E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
 R.C. 2923.32 ("the Ohio RICO Act") is patterned after the Federal RICO Act, Section 1962, Title 18, U.S.Code. Sheets v. Carmel Farms, Inc. (1997), Franklin App. No. 96APE09-1224. Consequently, Ohio courts often look to federal case law for guidance in applying Ohio's RICO Act. Id. In keeping with this practice, this court has applied the three-part test used by the federal courts to determine whether an "enterprise" exists under the Federal RICO Act to Ohio's RICO Act. State v. Warren (1992), Franklin App. No. 92AP-603. In Warren, this court concluded that, in order to establish the existence of an "enterprise" under Ohio's RICO Act, there must be some evidence of: (1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity. Id.; United States v. Turkette (1981), 452 U.S. 576, 583, 101 S.Ct. 2524.
 Appellant contends that the state failed to establish the existence of an "enterprise" in that there was no evidence of an ongoing organization separate and distinct from the alleged pattern of corrupt activity. We agree. Once all of the evidence of property found during the investigation which could not be shown to be stolen is excluded from consideration, as our above discussion of appellant's fourth assignment of error requires, all that remains is some evidence that appellant committed the predicate offenses of receiving stolen property and unlawfully possessing a dangerous ordinance. Absent the inadmissible evidence suggesting that appellant was surrounded by vast quantities of stolen property, the record contains no evidence whatsoever of an ongoing organization involved with stolen property. Rather, the record contains only evidence that appellant purchased two stolen ATVs, retained a number of other stolen items, and unlawfully possessed two detonators.
 Appellant's first assignment of error is overruled with respect to appellant's convictions for receiving stolen property, but sustained with respect to appellant's conviction for engaging in a pattern of corrupt activity.
 Appellant's second assignment of error asserts that the trial court lacked jurisdiction to try appellant on the seven receiving stolen property counts involving property found on the Kentucky farm.
The criminal law jurisdiction of Ohio Courts is governed by R.C. 2901.11, which provides, in relevant part, as follows:
 (A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:
 (1) The person commits an offense under the laws of this state, any element of which takes place in this state.
Appellant argues that, under this provision, the trial court lacked jurisdiction over the receiving stolen property counts involving property that was found on the Kentucky farm, because the state presented no evidence that appellant received, retained or disposed of said property in Ohio. The state counters that, because it presented evidence that all of the property found in Kentucky had been obtained by theft in Ohio,[3]
it did not need to present evidence that appellant received, retained or disposed of the property in Ohio.
Preliminarily, appellant is only partially correct when he claims that the state presented no evidence that he received, retained or disposed of any of the stolen property found in Kentucky while in Ohio. The Jeep Wrangler, Bobcat skid loader, Chevrolet pickup, Coachman travel trailer, and John Deere lawn tractor make up the stolen property that was found in Kentucky. While the record contains no evidence that appellant received, retained or disposed of the Jeep Wrangler, Bobcat skid loader, Coachman travel trailer or John Deere lawn tractor in Ohio, the record does contain evidence that appellant retained the Chevrolet pickup in Ohio. Specifically, Detective Cordial testified that, while he was conducting surveillance of appellant's home prior to the search of the Kentucky farm, he observed the Chevrolet pickup truck parked in front of appellant's home in Columbus, Ohio. Based on this testimony, the jury could have reasonably concluded that appellant retained the pickup in Ohio for at least some brief period. Thus, the trial court had jurisdiction over the receiving stolen property count involving the Chevrolet pickup truck.
The question of whether the trial court had jurisdiction over the receiving stolen property counts involving the Jeep Wrangler, Bobcat skid loader, Coachman travel trailer and John Deere lawn tractor remains. In State v. Lyons (1985), Summit App. No. 11779, the Ninth District addressed the issue of whether theft is an element of the offense of receiving stolen property, so as to render one who receives, retains or disposes of property in Michigan, which property was stolen in Ohio, subject to the jurisdiction of the Ohio courts under R.C. 2901.11(A)(1). The court concluded that theft is not an element of receiving stolen property, and that the Ohio courts therefore lacked jurisdiction over the defendant.
We agree with the Ninth District's conclusion that theft is not an element of the offense of receiving stolen property. R.C. 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The plain language of this section indicates that the state need establish only two elements in order to obtain a conviction for receiving stolen property: (1) that defendant received, retained or disposed of property which was not his own; and (2) that the defendant knew or had reasonable cause to believe that the property was stolen. The state is not required to establish that the property at issue was actually obtained by theft. Id.
We disagree, however, with the Ninth District's conclusion that, because theft is not an element of the offense of receiving stolen property, Ohio courts necessarily lack jurisdiction over a defendant charged with receiving stolen property unless there is some evidence that the property was received, retained or disposed of in Ohio. Such a conclusion looks only to whether the first element of the offense of receiving stolen property took place in Ohio, and ignores the possibility that the second element of the offense may have taken place in Ohio. For example, in the present case, the evidence was more than sufficient to establish that appellant resided in Ohio. The evidence was also sufficient to permit the jury to find that appellant knew or had reasonable cause to believe that the Jeep Wrangler, Bobcat skid loader, Coachman travel trailer, and John Deere lawn tractor had been obtained through the commission of a theft offense. In fact, appellant has not contested the sufficiency of the evidence on this point; thus, the evidence that: (1) appellant lived in Ohio; and (2) knew or has reason to believe that the Jeep Wrangler, Bobcat skid loader, Coachman travel trailer, and John Deere lawn tractor were stolen, will support an inference that appellant knew or had reasonable cause to believe these items were stolen while he was in Ohio. Because the evidence will support a finding that the second element of the receiving stolen property counts involving the Jeep Wrangler, Bobcat skid loader, Coachman travel trailer and John Deere lawn tractor took place in Ohio, the trial court had jurisdiction over these counts.
Appellant's second assignment of error is overruled.
Our resolution of appellant's fourth and first assignments of error renders appellant's third, fifth, sixth and seventh assignments of error moot, and we decline to address them. App.R. 12(A)(1)(c).
Appellant's first assignment of error having been sustained in part and overruled in part, appellant's second assignment of error having been overruled, appellant's fourth assignment of error having been sustained, and appellant's third, fifth, sixth and seventh assignments of error having been found to be moot, the judgments of the trial court are reversed, and these matters are remanded for further proceedings in accordance with this opinion.
Judgments reversed and cause remanded.
TYACK, P.J., concurs.
BROWN, J., dissents.
[1] Both parties assert that appellant's total sentence was fifteen years, but they appear to have failed to include appellant's one-year consecutive sentence on the single count of unlawful possession of a dangerous ordinance in their calculations.
[2] Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
[3] The parties entered into a series of stipulations which indicated what the testimony of the victims from whom the property involved in the eleven receiving stolen property counts for which appellant was on trial would be if the victims were called to testify. These stipulations, which were read to the jury at the beginning of appellant's trial, indicated that each of the items in question had been stolen in Ohio.