This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Daniel R. Emch has appealed from a judgment of the Summit County Court of Common Pleas that found him guilty of one count of possession of cocaine in violation of R.C. 2925.11, two counts of possession of drugs in violation of R.C. 2925.11, and one count of possession of marijuana in violation of R.C. 2925.11. This Court affirms.
 I
After drugs and drug paraphernalia were found in Appellant's vehicle, residence, and storage unit, he was indicted for illegal manufacturing of drugs in violation of R.C. 2925.04(A), possession of cocaine in violation of R.C. 2925.11, possession of drugs in violation of R.C. 2925.11, and possession of marijuana in violation of R.C. 2925.11.[1] After Appellant pled not guilty to all of the charges against him, he filed a motion to suppress the evidence seized during the searches of his vehicle, residence, and storage unit. The trial court denied Appellant's suppression motion.
On August 10, 2000, Appellant waived his right to a trial by jury and a bench trial was held. On October 26, 2000, the trial court, in its findings of fact and conclusions of law, found that the state proved beyond a reasonable doubt all of the essential elements of the charges against Appellant. The trial court sentenced Appellant to a definite term of one year for the possession of cocaine conviction and a definite term of four years for the possession of drugs convictions, and ordered him to pay a $100 fine for the possession of marijuana conviction. The trial court ordered that the sentences imposed for the possession of cocaine and the first count of possession of drugs be served concurrently, but consecutively with the second count of possession of drugs. Appellant has appealed the convictions, asserting five assignments of error.
 II Assignment of Error Number One "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE."
In his first assignment of error, Appellant has argued that the trial court erred in determining that his parole officer had reasonable grounds to search him. Appellant has asserted that "possible" criminal activity is not enough to justify a warrantless search and seizure. Appellant has also contended that his parole officer was functioning as "an arm of other investigative agencies."
An appellate court reviews a trial court's decision on a motion to suppress de novo. State v. Bing (1999), 134 Ohio App.3d 444, 448, citingOrnelas v. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657,134 L.Ed.2d 911. However, the appellate court reviews the facts only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. Id. Accordingly, this Court accepts the factual determinations of the trial court if they are supported by competent, credible evidence, and without deference to the trial court's conclusions will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994), 95 Ohio App.3d 93,96. In the proceedings below, however, the trial court made limited factual findings in connection with its decision denying Appellant's motion to suppress. Accordingly, this Court relies on the trial court's limited factual finding that when Appellant was paroled he signed the conditions of supervision, the testimony transcribed from the suppression hearing, and the undisputed facts that are supported by the record in determining whether the trial court reached the proper result.
At the suppression hearing, Mark Herubin, a parole officer for the Adult Parole Authority, testified that he has supervised Appellant since his 1998 release from prison. Herubin testified that Appellant signed the conditions of supervision on September 30, 1998. Herubin explained that as Appellant's parole officer, his duties include supervising Appellant to ensure that he is a law-abiding citizen, conducting urine screens, checking his employment, and periodically checking his residence.
Herubin testified that on January 3, 2000, he was contacted by Agent Turner of CEN-TAC and the Bureau of Alcohol, Tobacco, and Firearms, and was advised that Appellant was possibly producing and distributing methamphetamines. Herubin stated that he informed Agent Turner that Appellant was scheduled for an appointment on January 12 and that, pursuant to department policy, he would detain Appellant and escort him to his residence and search his residence. Herubin testified that when Appellant failed to report to the meeting, an act which constitutes a parole violation, he contacted Detective Gottas.[2] Herubin acknowledged that his office hours are from 8:00 a.m. — 4:45 p.m. and that he left for Appellant's residence around 4:00 p.m., but he pointed out that Appellant was not detained until after 4:45 and that Appellant never called or reported to the parole office. Herubin testified that he informed Detective Gottas that since Appellant failed to report, he and another parole officer would conduct a home visit and search Appellant's residence. He testified that he suggested Detective Gottas have Appellant detained if he attempted to leave the residence. Herubin testified that after meeting Detective Gottas and other CEN-TAC agents, he drove to Appellant's residence. While en route to Appellant's residence, Herubin was informed that Appellant had left his home. Herubin then requested that the Stow Police execute a traffic stop on Appellant.
Herubin testified that after the stop, he and parole officer Jeff Jones removed Appellant from the vehicle and, pursuant to department policy, patted him down and searched the vehicle. Herubin testified that no one from any other agency conducted the search of the vehicle. When discussing what he discovered in the car, Herubin stated:
 "We found a camera case at the base of the driver's seat where [Appellant] was sitting with various drugs that we believe[d] to be [valium] tagged for sale. Also in the camera case was * * * either [methamphetamine] or what I believe[d] to be cocaine in a baggy. And then in the back seat on the floor we found * * * approximately a fourth pound of marijuana wrapped in a garbage bag."
Herubin testified that after finding the drugs in Appellant's car they turned him over to the police and he was taken into custody. After Appellant was arrested, Herubin drove to Appellant's residence and conducted a search. Herubin testified that in accordance with normal search procedure, backup and security, in this case the Stow Police Department and CEN-TAC, were present during the search. Herubin testified that no other law enforcement agencies other than those directly involved with the Adult Parole Authority searched the residence. When asked what he found in Appellant's residence, Herubin responded:
 "Red phosphorous, other items used in the manufacturing of [methamphetamine], Iodine crystal, [E]psom salt, tubing, a jar that had a hole. It was water squeezed for — used as a condenser. * * * I found a [methamphetamine] cookbook behind the wall in the front bedroom."
Herubin testified that parole officer Jeff Jones searched Appellant's storage unit. Herubin explained that the unit was searched because he believed it was used for storing drug-manufacturing items. Herubin testified that Jones verified with their supervisor his authority to search the storage unit.
Herubin testified that Appellant had recently been released from Oriana House after serving approximately ninety days for a drug use parole violation. Herubin also testified that Appellant's prior record of numerous assaults on police officers, second degree murder, and resisting arrest caused him concern and added to his decision to detain Appellant for his failure to report.
The record establishes that prior to being paroled, Appellant signed the conditions of supervision form authored by the Adult Parole Authority. Pursuant to condition 9, Appellant agreed:
 "[T]o a search, without warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. Notice: Pursuant to [R.C. 2967.131], Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision." (Emphasis sic.)
The Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Section 14, Article I of the Ohio Constitution contains language nearly identical to that of the Fourth Amendment, and similarly prohibits unreasonable searches and seizures. State v. Kinney
(1998), 83 Ohio St.3d 85, 87, certiorari denied (1999), 526 U.S. 1007,119 S.Ct. 1148, 143 L.Ed.2d 214. While protections against unreasonable searches and seizures are well established, exceptions do exist.
Pursuant to R.C. 2967.131(B):
 "[Parole of probation officers] who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the parolee * * *, the place of residence of the parolee * * *, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the parolee * * * has a right, title, or interest or for which the parolee * * *, has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the parolee * * * is not abiding by the law or otherwise is not complying with the terms and conditions of the parolee's * * * conditional parole[.]" R.C. 2967.131(B)[3]; see, also, Helton v. The Ohio Adult Parole Authority (June 26, 2001), 10th Dist. No. 00AP-1108, 2001 Ohio App. LEXIS 2938; State v. Mattison (Sept. 3, 1999), 2nd Dist. No. 17554, 1999 Ohio App. LEXIS 4062; State v. Howell (Nov. 17, 1998), 4th Dist. No. 97 CA 824, 1998 Ohio App. LEXIS 5517.
Accordingly, when a searching officer possesses reasonable grounds to believe that a parolee is in violation of the law or the conditions and terms of parole, a warrantless search of the parolee's home and other property does not violate the Fourth Amendment.
Although the term "reasonable grounds" is not defined in R.C.2967.131(B), the Ohio Department of Rehabilitation and Correction ("ODRC") and Ohio case law provide interpretations. ODRC policy 501-11, promulgated pursuant to R.C. 5120.01, which was identified by Herubin, defines "reasonable grounds" as "[a] subjective suspicion supported by objective articulable facts that would reasonably lead an experienced and prudent officer (person) to suspect that an offender is not abiding by the law or otherwise is not complying with the conditions of supervision." Ohio appellate courts have determined that the "reasonable grounds" standard is satisfied if the information provided to the searching officer "indicates * * * only the likelihood * * * of facts justifying the search." (Quotations and citations omitted.) Helton, at *16; see, also, Howell, at *13. In applying this standard, the courts found that the "reasonable grounds" standard does not require the level of certainty necessary for "probable cause." Id.
This Court finds that the trial court had competent, credible evidence to form the factual conclusion that Appellant signed the conditions of supervision form promulgated by the Adult Parole Authority. The record contains the form with Appellant's signature and it is undisputed that Appellant signed the form. This Court also finds that the trial court's denial of Appellant's suppression motion is supported by the facts. The record establishes that Herubin had reasonable grounds to believe that Appellant was not abiding by the law and not complying with the conditions of his parole.
Pursuant to Appellant signing the conditions of supervision and agreeing to warrantless searches based on reasonable grounds, Herubin had the authority to search Appellant, his vehicle, and his storage unit. A review of the record reveals several facts that support a finding that reasonable grounds existed for the warrantless searches: 1) Herubin was contacted by Agent Turner of the Bureau of Alcohol, Tobacco, and Firearms and informed that, based on government surveillance, Appellant was possibly involved in the production and distribution of drugs; 2) Herubin knew that Appellant had recently tested positive for drugs; 3) Appellant failed to report to his scheduled parole meeting with Herubin; and 4) Herubin testified that Appellant's prior record of assaulting police officers, second-degree murder, and resisting arrest caused him concern and factored into his consideration for detaining and searching Appellant. Based on the foregoing facts, the previously discussed interpretations of the term "reasonable grounds" are satisfied in the case sub judice because Herubin had a subjective suspicion supported by articulable facts that Appellant was not abiding by the law. Further, a likelihood of the facts justifying the search existed.
Appellant has also asserted that Herubin was not acting as his parole officer when the searches were conducted but "as an arm of other investigative agencies." However, Appellant has not cited any evidence to support his assertion that Herubin was working for another agency or that any other agency asked him to act on its behalf. An appellant bears the burden of affirmatively demonstrating error on appeal. Ivery v. Ivery
(Jan. 12, 2000), 9th Dist. No. 19410, at 2. Moreover, it is not the duty of this Court to search the record for evidence to support an appellant's argument of an alleged error. See State v. Watson (1998),126 Ohio App.3d 316, 321, appeal not allowed (1998), 82 Ohio St.3d 1413. Accordingly, this Court will not address Appellant's broad, unsupported assertions that Herubin was not acting as a parole officer during the searches. Appellant's first assignment of error is overruled.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S JURY WAIVER WHERE SUCH WAIVER WAS NOT MADE KNOWINGLY AND INTELLIGENTLY."
In his second assignment of error, Appellant has averred that his jury waiver was not knowingly or intelligently made because he was misinformed and left ignorant of the protections of the Ohio Rules of Evidence.
Pursuant to Crim.R. 23(A), a defendant may knowingly, intelligently, and voluntarily waive his right to a jury trial and be tried by the court. The waiver must "be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof." R.C. 2945.05. "A trial court is not required to interrogate a defendant to determine their knowledge about their right to a jury trial." State v. Harris (Dec. 22, 1999), 9th Dist. No. 98CA007142, at 2, appeal not allowed (2000),88 Ohio St.3d 1481. "While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so." State v. Jells (1990), 53 Ohio St.3d 22,26.
The record contains Appellant's signed and filed waiver of trial by jury. The trial transcript contains the court's discussion of Appellant's waiver. After Appellant's attorney stated that he had discussed the waiver extensively with Appellant, the trial court went over the rights Appellant would be waiving by waiving his right to a jury trial. When asked by the trial court if he understood that he had a right to a trial by jury, which is contained in the Ohio and United States Constitutions, Appellant answered "yes." The trial court then asked:
 "And by giving up this right, you are having the matter tried to the court; you're also giving up your right to present your case to 12 citizens of this community who would have to agree unanimously on any type of verdict in this case, either guilty or not guilty, in order to have a verdict; do you understand that?"
Appellant answered "yes" to the trial court's question concerning the rights he was waiving. When asked about the meaning of signing the waiver form, Appellant responded: "On advise [sic] of my counsel. My counsel told me that he thought that you would be fair and that you would be impartial in this matter and I am taking his judgment in that." The trial court then asked Appellant if it was his decision to waive the jury trial, and not his attorney's decision. Appellant answered: "Right. I signed it. That's my decision to go with the judge in this matter." The trial court then asked: "So is it your desire, your wish to voluntarily give up your right to have a trial by jury and have this matter tried in front of myself?" Appellant responded: "Yes, my concern has been that a judge — jury would be prejudiced — a jury would be prejudiced by my past history and my not testifying and my hope is that I could have a fair hearing from a judge."
Upon review of the record, this Court finds that Appellant's waiver of his right to a jury trial complied with the requirements set forth in R.C. 2945.05 and Crim.R. 23(A). The written jury waiver was signed by Appellant on the date of the trial, witnessed by the trial judge, and filed with the Summit County Court of Common Pleas on the same date. The record further shows that the trial court discussed with Appellant the implications of a waiver of a jury trial and questioned him about his waiver. Appellant provided both a written and verbal waiver.
It is not the duty of the trial court to educate defendants on all of the rules of evidence and criminal procedure. The trial court must simply comply with and enforce the Ohio Revised Code and the Ohio Rules of Evidence and Criminal Procedure. To that end, the record clearly establishes that the waiver complied with the requirements of R.C. 2945.05
and Crim.R. 23(A), and that Appellant assured the trial court that he was aware of his right and was knowingly and intelligently waiving such right. Accordingly, Appellant's second assignment of error is not well taken.
 Assignment of Error Number Three "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
In his third assignment of error, Appellant has argued that his trial counsel was ineffective because he allowed Appellant to waive his jury trial right based on his mistaken belief that his past criminal history would be admitted and because he failed to subpoena a witness who would have corroborated the testimony of Kelly Friend, the sole witness for Appellant.
The Sixth Amendment guarantees the right to effective assistance of counsel to each defendant. In Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court set forth a two-part test to determine if a conviction or sentence should be reversed based on ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." Id. at 687. Deficiency is established by proving "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Id. Second, the defendant must demonstrate that the deficient performance by counsel was serious enough that it resulted in prejudice to the defendant "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
Ohio's ineffective assistance of counsel standard is substantially similar to the Strickland standard. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
A party claiming ineffective assistance of counsel has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. The appellate court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 466 U.S. at 690. First, the defendant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Then, the court must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id. "An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, ¶ 31, citing State v. Loza (1994),71 Ohio St.3d 61, 83.
This Court finds that Appellant failed to meet his burden of demonstrating that there is a reasonable probability that, but for the alleged errors, the result of the proceedings would have been different. Appellant has presented no evidence, beyond broad, self-serving assertions, as to what Kelly Friend's drug counselor would have testified to had Appellant's trial counsel called him as a witness. Accordingly, Appellant's claims that the lack of testimony prejudiced him are without merit. Further, Friend's testimony was inconsistent as to whether the counselor even knew that she possessed drugs and drug paraphernalia. Appellant also failed to demonstrate prejudice based on his jury waiver. Appellant presented no evidence, or even arguments, that had the trial been conducted before a jury rather than a judge, the result would have been different. Based on the foregoing, Appellant's third assignment of error is overruled.
 Assignment of Error Number Four "APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 Assignment of Error Number Five "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his fourth and fifth assignments of error, Appellant has challenged the adequacy of the evidence produced at trial. Specifically, Appellant has claimed that the record contains insufficient evidence that he "knowingly" possessed drugs and that his convictions are against the manifest weight of the evidence. As a preliminary matter, this Court notes that sufficiency of the evidence produced by the state and weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Smith, 9th Dist. No. 20885, 2002 Ohio 3034, ¶ 8. (Citations omitted.)
To determine whether a conviction is against the manifest weight of the evidence, this Court must:
 "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." Statev. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, appeal not allowed (2000), 88 Ohio St.3d 1482, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was found guilty of possession of cocaine, drugs (valium), and marijuana in violation of R.C. 2925.11(A). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." A person acts knowingly when, regardless of his purpose, "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Pursuant to R.C. 2925.01(K), possession entails "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
"Possession may be actual or constructive." State v. Kobi (1997),122 Ohio App.3d 160, 174. Constructive possession occurs when one "knowingly exercis[es] dominion and control over [the drugs], even though [the drugs] may not be within his immediate physical possession" or when one has knowledge of the presence of the drugs. State v. Hankerson
(1982), 70 Ohio St.2d 87, syllabus, certiorari denied (1982), 459 U.S. 870,103 S.Ct. 155, 74 L.Ed.2d 130; see, also, State v. Wolery (1976),46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932,97 S.Ct. 339, 50 L.Ed.2d 301. Furthermore, ownership of the drugs need not be proven to establish constructive possession. State v. Mann (1993),93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the element of constructive possession. See State v. Jenks (1991),61 Ohio St.3d 259, 272-73; State v. Butler (1989), 42 Ohio St.3d 174,176; Hankerson, 70 Ohio St.2d 87 at syllabus. Moreover, drugs discovered in close proximity to the accused may constitute circumstantial evidence to support a finding of constructive possession. See Kobi,122 Ohio App.3d 160, 174; State v. Scalf (1998), 126 Ohio App.3d 614,620, appeal not allowed (1998), 82 Ohio St.3d 1431.
During Appellant's trial, Stow Police Officer David Semonin testified that he was asked to make a traffic stop on a vehicle driven by a suspected parole violator. Officer Semonin testified that upon citing Appellant's vehicle, he turned on the overhead lights of his marked patrol car and attempted to stop the car. When asked the length of time it took Appellant to pull over, Officer Semonin responded:
 "The vehicle was in front of me and there were some cars between that vehicle and my patrol car. I turned my overhead lights and siren on and I passed the cars that were in between. As I passed the cars in between, the Buick Regal very, very quickly made a right-hand turn on to Harriet Road and started driving north. * * * At that point in time, I just stayed behind the car and the car pulled to the right several hundred feet down Harriet north of Kent Road."
Parole officer Herubin also testified at the trial. Herubin testified that he and Jones searched Appellant's car and found a number of pills and a substance he believed to be methamphetamine inside a camera case.[4] As previously noted, Herubin testified that he found the case on the floor in front of the driver's seat between the gas pedal and the seat, and the drugs were in the front pocket of the case. Herubin testified that marijuana was found in the back seat of Appellant's car. He also testified that he found about one hundred empty packages of nasal decongestant under the driver's seat. Herubin testified that Appellant was placed in a patrol car, read his rights, and taken to the police station.
Kevin Borchert, a special agent with the Drug Enforcement Administration, testified that he conducted surveillance on Appellant after receiving a call from the parole authority. Borchert testified that he followed Appellant to his storage unit and witnessed him in a hurried manner unload boxes and garbage bags from the trunk of his car into the storage unit.
Parole officer Jones testified at trial that he and Herubin searched Appellant's car. Jones testified that he found a box in the back seat with a blue paper bag in it that was filled with marijuana. Jones testified that he and Herubin also searched Appellant's residence. He stated that, after confirming his authority and receiving permission from his supervisor, he searched Appellant's rented storage unit. He testified that along with some items used to make drugs he found around three thousand valium tablets.
Kelly Friend, now Appellant's wife, testified on behalf of Appellant. Friend testified that Appellant moved into her trailer around January 2000 and that he claimed the trailer as his residence for parole purposes. Friend testified that the person who lived in the trailer before her did not remove his belongings and the trailer was full of his "stuff." She also testified that the storage unit searched by Jones contained the property of her ex-boyfriend, now deceased, who used to make drugs for a living. On direct examination, she testified that she had spoken with her drug counselor about the drugs and drug-making items and decided to take it all to the counselor so they could determine what to do with it. When asked on cross examination about her drug counselor allowing her to keep drugs and transport them, Friend's answers varied as to whether the counselor knew she had illegal drugs in her possession or if he thought the items were drug-manufacturing products. Friend testified that the drugs in the box and the camera case were from the property of her ex-boyfriend. She stated that Appellant did not know that the drugs were in the car. She testified that the sinus medicine packets under the driver's seat were from the trash she had collected when gathering up the former trailer owner's belongings.
After reviewing the entire record, and weighing the evidence and all reasonable inferences, this Court cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice. The trial court was in the best position to adjudge the credibility of the witnesses and give proper weight to their testimony. The trial testimony demonstrates that Appellant's constructive possession of the cocaine, valium, and marijuana could have been based on his physical control of the areas where the drugs were found, his close proximity to the drugs, and/or his dominion and control over the storage unit.
This Court has previously noted that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Appellant's fourth and fifth assignments of error are overruled.
 III
Appellant's five assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J, CARR, J. CONCURS IN JUDGMENT ONLY.
[1] The illegal manufacturing of drugs charge was dismissed.
[2] Herubin testified that Agent Turner became ill and was replaced by Detective Gottas.
[3] R.C. 2967.131 has been amended effective September 22, 2000, which moved R.C. 2967.131(B) to R.C. 2967.131(C).
[4] It was later discovered that the pills were valium and the substance was cocaine.