THE STATE OF OHIO, APPELLEE, *v.*
HANKERSON ET AL., APPELLANTS.

(No. 81-1399—Decided May 19, 1982.)

88

90

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Christian J. Schaefer* and *Mr. Leo Hildebrandt,* for appellee.
*Mr. H. Fred Hoefle,* for appellants.

SWEENEY, J.   In *State* v. *Wolery* (1976), 46 Ohio St. 2d 316, this court acknowledged the prevailing rule that actual

physical possession of stolen property is not a requisite of the offense of receiving stolen property, but that a conviction may be based on the accused's constructive possession of the property. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State* v. *Wolery, supra.*

It is undisputed that Lorette and Joseph Hankerson owned the premises at 5858 Valley View, and had dominion and control of the home, including the second floor room of their son Donald over whom they exercised parental custody, control and responsibility. However, the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object. Without this element one could be found to be in illegal possession of stolen property surreptitiously placed in or upon his property by another. *State* v. *Motyka* (1973), 11 R.I. 38, 298 A. 2d 793; *Amaya* v. *United States* (C.A. 10, 1967), 373 F. 2d 197; *Commonwealth* v. *Davis* (1971), 444 Pa. 11, 280 A. 2d 119. See *State* v. *Daugherty* (1970), 12 Ariz. App. 366, 470 P. 2d 686.

Indeed, the Court of Appeals recognized, *sub silentio,* that constructive possession requires a showing of conscious possession, by including in its analysis a discussion of whether the appellants had knowledge that the subject property was on the premises. The court concluded that in light of the police testimony that the speakers and turntable were not hidden, were in plain view in Donald's room, were large and bulky, and were connected and operable, the court as trier of fact could infer from the appellants' ownership, dominion and control of the premises, and the facts of normal family home occupancy, that the appellants had knowledge that the subject property was in the second floor room. The appellants contend before this court that, to the contrary, this evidence is insufficient to support a finding beyond a reasonable doubt that they had actual knowledge their son had secreted stolen property in the home.

A fact may be proved to a moral certainty by circumstantial evidence as well as direct evidence. *State* v. *Nevius* (1947),

147 Ohio St. 263; *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 118. As noted in the *Graven* case, certain elements of certain crimes can only be proved by circumstantial evidence, absent an admission by the accused. One such element is that of knowledge of the presence of stolen property where the crime of receiving stolen property is asserted on the basis of the accused's constructive possession. Circumstantial evidence, however, must do more than raise a strong presumption of guilt in order to support a conviction. In order to prove an essential element of a crime the circumstantial evidence must be irreconcilable with any reasonable theory of the accused's innocence. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157; *State* v. *Graven, supra,* at page 118; *State* v. *Goodin* (1978), 56 Ohio St. 2d 438, paragraph one of the syllabus. Whether a theory of innocence is reasonable must be determined in view of the weight and credibility that the fact finder gives the evidence, and an appellate court can reverse a conviction based in part on circumstantial evidence only where the evidence is insufficient as a matter of law to enable the fact finder to exclude a reasonable hypothesis of innocence. *State* v. *Sheppard* (1956), 165 Ohio St. 293; *State* v. *Graven, supra,* at page 119.

In light of these guidelines let us assume, *arguendo,* that the court as fact finder rejected the testimony of all the defense witnesses believing it not to be credible, but accepted completely the testimony of the prosecution witnesses. In such a case the fact finder would have before it evidence that stolen speakers and a turntable were overtly displayed in an upstairs bedroom occupied by the appellants' minor son who was also a thief. The appellants' home, including the son's bedroom, contained more than the usual amount of electronic equipment including numerous stereos, televisions and radios. Three of those articles were identified as stolen. Those three articles included two large stereo speakers approximately 30 inches high and weighing approximately 30-40 pounds. The defendants had been informed in the summer of 1979, and again on December 27, 1979, that various neighbors believed their son to be a neighborhood thief. During the December 27 conversation Mrs. Hankerson stated that she would check Donald's room for suspicious property. Additionally, Mrs. Hankerson

stated during the course of the search of her home by police "[w]e bought this stuff * * * and you can't prove we didn't."

The determinative issue is whether this evidence is sufficient to support a finding beyond a reasonable doubt that the appellants had knowledge that the two stolen stereo speakers and the stolen property were in their home, and that they thus had constructive possession of it. We hold that it is.

Joseph Hankerson admitted that his son could not afford stereo speakers the size of the stolen speakers found in Donald's room. This fact, in combination with Donald's arrest record and his parents' knowledge that Donald was rumored in the neighborhood to be a thief, is more than sufficient to enable the trier of fact to conclude that appellants had knowledge of and reason to believe that the stereo equipment found in Donald's room was stolen.

Although a closer question, we also believe that the evidence was sufficient to support, beyond a reasonable doubt, the conclusion that appellants knew that Donald had brought stolen property into the family home. Along with the circumstances noted by the Court of Appeals, the record reflects the following testimony of Officer Beebe:

"Q. Now, did you ask Mrs. Hankerson about any of these items?

"A. When I *first walked* into the room, Mr. and Mrs. Hankerson was downstairs. When I *first walked* into the room, I observed the speakers and all.

"Q. You're talking about the bedroom?

"A. That's correct, and all the stereo equipment. I looked at the speakers. I looked at all the other stuff. I said to one of the other policemen, 'Should we take all the other stuff, too?' Mrs. Hankerson come up the stairs and said, 'We bought this stuff for our son and you can't prove we didn't.' " (Emphasis added.)

Mrs. Hankerson's comment, made upon the initial entry of the police into Donald's room, is clearly indicative of her knowledge that the room contained property which might be considered suspect by the police. There was sufficient evidence to enable the fact finder to conclude that appellants knew stolen property was in the home.

The state not having cross-appealed the Court of Appeals'

holding that the two counts of the indictment were offenses of similar import, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

SHANNON, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

W. BROWN, Acting C. J., and C. BROWN, J., dissent.

SHANNON, J., of the First Appellate District, sitting for CELEBREZZE, C. J.