Defendant-appellant, Terry DeRossett, appeals his conviction in the Clermont County Court of Common Pleas for possession of marijuana. We affirm.
On March 1, 1997, appellant went to the village of Felicity Post Office where he picked up a package addressed to him and containing more than three thousand grams of marijuana. Appellant was arrested and subsequently indicted on one count of possessing more than one thousand grams but less than five thousand grams of marijuana, a violation of R.C. 2925.11 (C)(3)(d).[1] Appellant subsequently waived his right to a jury trial. On August 12, 1997, the case was tried to the bench.
At trial, plaintiff-appellee, the state of Ohio, presented the testimony of two U.S. postal inspectors and two deputy sheriffs who took part in appellant's apprehension and arrest. U.S. Postal Inspector Martin Arthur testified that on February 27, 1997, he received a telephone call from postal inspectors in Houston, Texas with information that they had a suspicious package addressed to appellant at appellant's address in Felicity. The package had been subject to canine inspection and had received a positive alert. Arthur instructed the Texas inspectors to forward the package to his attention. Upon receiving the package the next day, Arthur obtained a search warrant. The package contained approximately five pounds of green leafy substance which field tested positive for marijuana.[2] That same day, after repackaging the parcel, Arthur took it to the Felicity Post Office and a notice was left at appellant's residence advising him that a package was waiting for him at the Felicity Post Office.
On March 1, 1997, Arthur, U.S. Postal Inspector Mark Lanes, and Clermont County Deputy Sheriff Paul Larkin, a member of the Clermont County Narcotics Task Force, waited at the Felicity Post Office for someone to pick up the package. Shortly after 9:00 a.m., appellant entered the post office and approached the counter. Arthur, posing as a postal clerk, took the package to the front counter, asked appellant for identification, and received a driver's license in appellant's name which matched the name that was on the package. Arthur then instructed appellant to sign the express mail receipt, tore off the post office copy, and handed the package to appellant who walked away from the counter.
Immediately thereafter, appellant was intercepted by Lanes and Larkin, who identified themselves to appellant. Larkin asked appellant if he would mind stepping in the back of the post office to discuss the contents of the package. As Lanes, Larkin, and appellant were taking a few steps toward the back of the post office, appellant said, "I knew it, I knew it."
Appellant was subsequently arrested. Clermont County Deputy Sheriff William Lynn testified that while he was transporting appellant to the Clermont County Jail, appellant stated that he knew he was caught because the previous day a marked patrol unit had pulled in his driveway and turned around. Appellant also stated that he knew something was up because the package had been opened. At a previous hearing, Lynn testified that appellant's foregoing statements were voluntarily made and not prompted by any questions or statements made by Lynn.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A).[3] The trial court denied the motion. Michelle Darnell, appellant's live-in girlfriend, testified that on February 28, 1997, the post office notice regarding the package was not in the mailbox until after a police cruiser parked in front of the mailbox. She also testified that it was not unusual to go to the post office to pick up packages too big for the mailbox and that the package appellant picked up on March 1 was too big for the mailbox. Darnell claimed she told appellant about the cruiser when she gave him the post office notice.
Appellant testified on his own behalf and stated that he had never received packages of marijuana at his address in the past and that he did not know what was in the package. Appellant testified that he had the package in his hands long enough to pick it up and turn around. Appellant admitted stating, "I knew it, I knew it" when Lanes and Larkin put their hands on him. Appellant denied, however, admitting to Lynn that he knew he was caught. Appellant testified that he instead said to Lynn that he knew things were funny because of the police cruiser in front of his mailbox and because he had never signed for a package that was in as rough of a shape as this one was. Appellant stated he knew the package had been tampered with. Appellant had no explanation, however, as to why some unknown individual from Texas would send him six pounds of marijuana at his exact address.
At the close of the evidence, appellant renewed his motion for judgment of acquittal. The trial court denied the motion. Appellant was subsequently convicted as charged. This timely appeal follows.
In his sole assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion. Appellant contends that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that appellant knowingly "possessed" the marijuana.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The standard of review for a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781 * * * followed).
R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v. Haynes (1971),25 Ohio St.2d 264, 269-270. "Actual possession exists where circumstances indicate that one has or had an item within his dominion or control." State v. Stringer (Sept. 29, 1997), Scioto App. No. 97 CA 2506, unreported. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155; State v. Franco (Apr. 27, 1998), Madison App. No. CA97-08-035, unreported. Possession is a voluntary act if "the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C.2901.21(C)(1). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B). See, also, State v. Stivers (Mar. 19, 1990), Butler App. No. CA89-05-079, unreported.
Appellant argues that even construing the facts in a light most favorable to the state, there was absolutely no evidence before the trial court to prove constructive possession. We disagree. The state's evidence undisputedly established that appellant had actual physical control of the package, and that the package was in appellant's actual, not constructive, possession. We are mindful that appellant exercised control over the package for only a very short period of time. However, no particular duration of the control exercised over the substance is specified in R.C. 2925.01(K). State v. Combs (Sept. 10, 1991), Montgomery App. No. 11949, unreported. Appellant's knowledge that he had illegal possession of the marijuana can be inferred from (1) his "I knew it, I knew it" statement to Lanes and Larkin in response to their request for appellant to step in the back of the post office to discuss the contents of the package; (2) his admissions to Lynn that he knew he was caught; and (3) his lack of explanation as to why an unknown person would send six pounds of marijuana to him at his exact address. While appellant testified he did not know what was in the package and denied admitting to Lynn he knew he was caught, it was the duty of the trier of fact, the trial judge, to resolve conflicts in testimony and determine the credibility of the witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230.
Based upon the foregoing, we find that the evidence presented at trial established beyond a reasonable doubt that appellant knowingly possessed marijuana in violation of R.C. 2925.11(A). We therefore find that appellant's conviction was supported by sufficient evidence. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." If the drug involved is more than one thousand grams but less than five thousand grams of marijuana, the offense is a felony of the third degree. See R.C.2925.11(C)(3)(d).
[2] Following appellant's arrest, the contents of the package were tested again. They again field tested positive for marijuana with a gross weight of six pounds twelve ounces (or three thousand sixty-one grams).
[3] The record shows that while appellant meant to move for acquittal at the close of the state's case, he did not move until after appellant's girlfriend testified on his behalf. The trial court considered the motion to have been made at the close of the state's case.