OPINION
Sir Jeffrey Carroll, defendant-appellant, was indicted on three counts of possession of cocaine. Two of the counts were based upon the constructive possession of crack cocaine and powder cocaine found in an apartment. These two counts had firearm specifications attached because firearms were also found in the apartment. The third count was based upon the constructive possession of crack cocaine that was found in an automobile owned by defendant.
The case was tried to a jury who returned a guilty verdict for possession of crack cocaine found in the automobile. The jury failed to returned verdicts on the other two counts. The trial court sentenced defendant according to law. Defendant appeals, asserting the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
In August 1998, George Surgeon, the apartment manager at an apartment complex asked Columbus Police Officer Donald Paden, working special duty, to run the plates on a 1985 Cadillac that had been occupying one of the parking spaces at the complex. Surgeon suspected that the owner of the car was staying in apartment 3A, but was not on the lease. Paden ran the number and determined that it was registered under defendant's name. Paden also used LEADS to obtain a description of defendant. Rather than immediately place an apartment tow notice on the vehicle, Paden and Surgeon decided to go to apartment 3A to talk to him. As they headed towards the apartment, they observed a black man coming from the apartment. Paden knew that the man was not defendant because he was much shorter than the description he had obtained of defendant. Nevertheless, he asked the man if he was Sir Jeffrey Carroll and the man replied in the negative. Paden identified himself as a police officer and asked the man if he could get Carroll for him. The man knocked on the apartment door at unit 3A several times, as did Paden. This man told Paden that he would go around to see if he could get his attention from the balcony.
After a short period of time, Paden walked around to check on the man and observed him standing near the car registered to defendant. Paden then looked at the balcony and observed a second black man climbing down from the balcony. The first black man seemed to be waving him back. Paden grabbed the person coming down from the balcony and asked if he was breaking into the apartment, and the man said that he was not.
Other officers responded to Paden's call for assistance and the suspect was placed in the rear of a police cruiser. Kelly Becker, the woman who rented the apartment, arrived and indicated that she did not know the suspect in the cruiser. By that time, the first man that Paden had encountered had left the premises, while Paden's attention was diverted to the man climbing down from the balcony. Paden told Becker that the man in the cruiser had been observed coming from her balcony and that there could be other suspects in her apartment. At Paden's suggestion, Becker allowed the officers to search her apartment to make sure that it was safe to re-enter. The officers discovered drugs and drug paraphernalia in plain view, and called narcotics detectives. A search warrant was obtained for the apartment and the officers found two hundred and five grams of crack cocaine; two hundred eighty-five grams of powder cocaine; $35,900 in cash; a digital scale, together with a cutting board and razor blade; and three weapons, including an AK-47 type assault rifle, a 9 mm pistol and a .32 caliber Derringer, all of which were operable. They also found a valid Ohio driver's license issued to defendant, describing him as six foot three inches tall and weighing one hundred eighty-five pounds, on the kitchen counter next to the scales, as well as two receipts bearing defendant's name.
A drug-sniffing dog was called to inspect defendant's Cadillac. The dog positively alerted to the car and the car was impounded. After obtaining a search warrant, officers discovered 8.4 grams of crack cocaine underneath a large speaker in the trunk of defendant's car.
The trial court overruled a motion to suppress the evidence as outlined above and as reiterated at trial. In the motion to suppress hearing, defense counsel described defendant as an overnight guest who had sufficient standing to object to an illegal search.
The apartment was a two-bedroom apartment, but only one bedroom appeared to be used. It contained clothing and shoes which the detectives thought belonged to a man. A substantial sum of money was found in the pocket of a leather vest in the closet. At trial, in addition to the foregoing evidence, the state presented the testimony of Alonzo Funderburg, one of defendant's cellmates in the Franklin County Jail, who testified that defendant told him about many details of the case, essentially admitting that he was running a drug operation out of the apartment. According to Funderburg, defendant had been inside the apartment when the apartment manager and police officer first approached, and had escaped by jumping off the rear balcony. Funderburg also testified that defendant believed that he could use his car's broken window as a defense to the drug possession charge arising from the drugs found in the car. Funderburg initially testified that he volunteered to testify, but the prosecutor corrected the statement by stating that he had contacted Funderburg's attorney who had obtained his testimony. The prosecutor stated that he thought that Funderburg might be willing to testify since he and defendant had had a fight playing basketball at the jail. There was no offer of sentence reduction to Funderburg. Defendant attempted to impeach him as a liar who probably had obtained the information from court materials that he had read belonging to defendant while in jail with him.
About one week after the drugs were found in the apartment, Surgeon testified that defendant had returned to the apartment to try to obtain his property that was in the apartment. Surgeon was positive as to his identification of defendant. Defendant testified that he had no connection to the apartment other than that he had left his car at the apartment because a resident of one of the apartments was doing some work on it. He stated that he lived at another residence with his girlfriend, his daughter and his step-daughter, and produced a lease to the effect. He stated that his Cadillac had a broken rear window, that Funderburg had been in the apartment, rather than him, and had thrown the drugs into his car through the car's broken window. He offered no explanation for how the drugs ended up under a large speaker in the trunk of the car.
In his assignment of error, defendant challenges both the sufficiency and manifest weight of the evidence. This court set forth the test for sufficiency and manifest weight of the evidence in the case of State v. Malone (Dec. 1, 1998), Franklin App. No. 98AP-278, unreported, as follows:
 To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of (the offense) beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259
* * *. By contrast, when presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380
* * *. In an analysis of the manifest weight of the evidence, determinations of credibility and weight of the testimony remain with the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
Reversal of a conviction on manifest weight grounds should only occur when there has been a "manifest miscarriage of justice." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Defendant was convicted under R.C. 2925.11(C)(4)(c), which prohibits the knowing possession of crack cocaine in an amount between five and ten grams.
Possession may be actual or constructive. See State v.Haynes (1971), 25 Ohio St.2d 264, 267. Thus, the state needed to prove that defendant constructively possessed the cocaine found in his car. Constructive possession exists when an individual is able to exercise dominion and control over an item, even if the person does not have immediate physical possession of it. SeeState v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Constructive possession may be proved entirely by circumstantial evidence. See State v. Jenks (1991), 61 Ohio St.3d 259.
No one who testified had actually seen defendant in the apartment or near the Cadillac automobile at the time the drugs were found in the trunk. Thus, it was necessary that constructive possession be proved sufficient that a reasonable trier of fact could find beyond a reasonable doubt that defendant possessed the drugs in his car knowingly.
Construing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that defendant constructively possessed the cocaine found in his automobile. There was substantial testimony tying him to the apartment where, obviously, a major drug operation was taking place. While no fingerprints were discovered in the apartment, either of him or of others who were suspects, his driver's license was found together with two receipts bearing his name in a location next to drugs and cash. While defendant states that he kept his driver's license and the receipts in the automobile, and opines that someone else must have taken them up to the apartment, the jury need not have considered that explanation to be truthful. Defendant denied that he had any connection with the apartment at all, but several pieces of evidence presented by the prosecution belie that testimony. The apartment manager, with no known reason to lie, testified that, about one week after the evidence was obtained from the apartment, defendant approached him seeking to recover his property that was in the apartment. Cross-examination of the apartment manager, attempting to impeach the testimony as being mistaken, did not alter the manager's positive identification of defendant.
During the suppression hearing, defense counsel described defendant as an overnight guest or temporary resident of the apartment, which gave him standing to bring the suppression action. We must assume that the statement was ethically made and it would appear that the information came from defendant. Lastly, a cellmate testified to defendant's admissions that he had been involved in drugs in the apartment and that he stated that he would use the broken window as a defense to any knowledge that the drugs were in his automobile. Even if the informant's testimony were totally rejected, which is not within our province but within the province of the jury, there was sufficient evidence of a circumstantial nature to find beyond a reasonable doubt that defendant had knowledge that the crack cocaine was hidden in the trunk of his automobile.
The conviction was also not against the manifest weight of the evidence. The jury did not commit a miscarriage of justice by concluding that defendant had dominion and control over the cocaine in the trunk of his own automobile. The only testimony, that defendant had left the automobile with a resident of the apartment for repair, was by defendant whose credibility, as previously stated, could have been found to be zero. The testimony of defendant, that Funderburg had been the one at the apartment and had tossed the crack cocaine through the broken window of the Cadillac, also lacks credibility since the cocaine was found under a large speaker in the trunk of the automobile.
Defendant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ________________________ McCORMAC, J.
TYACK and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.