DECISION.
An inspector for a local realty company went to an apartment to investigate allegations that someone had been residing in the apartment while the tenant named on the lease was incarcerated. When the inspector arrived, he found defendant-appellant Michael James sleeping with an unidentified female companion on the living-room floor. Neither occupant was the named tenant, so the inspector promptly summoned the police.
The police conducted a limited search of the apartment and, for reasons that are not apparent from the record, confiscated a laptop computer, two cellular phones, and a camera. The laptop was found in a bedroom, between a mattress and an end table, under some clothes. James told the police that the laptop was his, and that he had gotten it from "G" — apparently a slang reference to a guy or a friend.
A few days later, James filed a police report alleging that approximately $4,000 had disappeared during the search of the apartment. He went to the police station to check on the status of his complaint, and his subsequent discussion with the police took place in an investigation room. Apparently it was standard procedure that, before James was taken to the investigation room, he was asked to empty his pockets. The police noticed that James had a key in his possession bearing the same number as the apartment in which he had been found.
After a brief discussion with the police regarding the money James claimed was missing, he decided not to further pursue that allegation. But he did request that the laptop that had been confiscated be returned to him. Apparently the police did not comply with James's request, because they later determined that the laptop had been stolen from a conventioneer who had visited Cincinnati briefly approximately nine months before. There was no question that the laptop belonged to the conventioneer, because his personal information was displayed when the power was turned on.
The discovery that the laptop had been stolen occasioned a return of the police to the apartment. This time, the police collected a cable bill with no address listed, but in James's name, and a prescription pill bottle identifying James as the patient.
James was charged with receiving stolen property[1] worth between $500 and $5,000, a fifth-degree felony.[2] He was convicted on the charge after a jury trial, and he now appeals that conviction. James claims, in a single assignment of error, that the jury's verdict was against the manifest weight of the evidence, and that the verdict was not supported by sufficient evidence. Because each of these two assertions requires a different standard of appellate review, we treat James's single assignment of error as two separate assignments. We overrule both claims and affirm James's conviction.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."[3] The challenge that the evidence introduced at trial was insufficient to support James's conviction requires that we determine "whether any rational factfinder, after reviewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt."[4]
By contrast, the challenge that the jury's verdict was against the manifest weight of the evidence requires that we unanimously disagree with the factfinder's resolution of conflicting, credible testimony.[5]
Thus we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice.[6]
We first hold that the evidence was sufficient to support James's conviction. For James to have been convicted for receiving stolen property, the state must have proven beyond a reasonable doubt that James (1) retained stolen property, (2) that he knew or had reasonable cause to believe was stolen.
First, there is little doubt that James retained stolen property. James does not disagree that the laptop in fact belonged to the conventioneer, and thus had been stolen. And the state's proof went beyond a showing that James was found in an apartment that contained stolen property. James first admitted to the police during the initial encounter at the apartment that the laptop was his. Then, even if that admission was not sufficient, he went to the police station and again asserted his ownership of the laptop by asking that it be returned to him.
But James claims in his appeal that, while the laptop may have been stolen, and while he may have retained it, he did not know that it had been stolen. There was ample evidence before the jury for it to have concluded otherwise.
The plain language of the statute did not require actual knowledge that the laptop was stolen, only that James had reasonable cause to know that the property was stolen. Certainly the jurors were entitled to evaluate the circumstantial evidence in determining what James knew or should have known,[7] and they were also entitled to make reasonable inferences from his unexplained possession of the stolen property.[8]
James claimed that he had obtained the laptop from "G," but he did not attempt to explain how "G" would have come into lawful possession of a laptop that, when turned on, identified the owner as an out-of-town Christian minister. The jury might also have considered that laptops are typically sold in stores or on the Internet, rather than given away or bartered for on the street. In the absence of any reasonable explanation concerning the mysterious "G," there was sufficient evidence presented for the jury to have concluded that, at least, James should have known that the laptop was stolen. Accordingly, we overrule James's argument that the jury's verdict was unsupported by sufficient evidence.
Next, James contends that the verdict was against the manifest weight of the evidence. In the trial court, James offered only one piece of evidence during the state's case in chief and then rested immediately after the state had finished. The evidence introduced was a social-security card from 1999, found in the apartment, but listing James's address as a different location. Presumably this was offered so that the jury could infer that James did not actually live in the apartment in which he was found. Even if the jury had believed that he lived elsewhere, his two admissions concerning ownership of the laptop were, as discussed above, sufficient to have established that he retained the laptop. Since there was no other conflicting evidence, we overrule James's contention that the jury's verdict was against the manifest weight of the evidence.
Therefore, the judgment of the trial court is affirmed.
 _________________ Painter, Judge.
 Hildebrandt, P.J., and Winkler, J., concur.
[1] See R.C. 2913.51(A).
[2] See R.C. 2913.51(C).
[3] See State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus.
[4] See State v. Clemons (1998), 82 Ohio St.3d 438, 444, 696 N.E.2d 1009,1016, certiorari denied (1998), 525 U.S. 1077, 119 S.Ct. 816.
[5] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546.
[6] Id. at 387, 678 N.E.2d at 547, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
[7] See State v. Hankerson (1982), 70 Ohio St.2d 87, 92, 434 N.E.2d 1362,1366.
[8] See State v. Arthur (1975), 42 Ohio St.2d 67, 69, 325 N.E.2d 888,889.