JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Promise Stewart (appellant) appeals from the trial court's decisions overruling his motion to suppress, denying his motion for acquittal and permitting the state to introduce "other acts" testimony. After reviewing the facts of the case and pertinent law, we reverse appellant's conviction and vacate his sentence.
 I. {¶ 2} On January 14, 2003, Cleveland Police Detective Joseph Bovenzi (Bovenzi) arranged a controlled drug buy from appellant's brother, Harry Stewart (Harry), based on information from a confidential informant (CI). Bovenzi and other officers followed Harry and CI to Midtown Towers Apartments (Midtown), located at 5686 Broadview Road, Parma, Ohio, where appellant and Harry lived[1] in separate apartments. Bovenzi observed CI wait on the second floor while Harry first went to his apartment on the fourth floor, then went to appellant's apartment on the fifth floor, and then finally met up with CI and exited the building. CI gave the prearranged signal that the drug transaction was complete. The officers followed Harry and CI and eventually arrested Harry in a local parking lot. Harry told Bovenzi he got the drugs that he sold to CI from Augusta Griggs (Griggs), who was staying at appellant's apartment. He also told Bovenzi the buy money and additional drugs were inside appellant's apartment. The officers and Harry went back to Midtown and Harry identified Griggs in the parking lot. Griggs had keys to appellant's apartment on a chain around his neck. Griggs told Bovenzi that he had appellant's keys so he could have access to appellant's apartment while he was visiting. The officers then went to appellant's apartment. Bovenzi testified that the door to appellant's apartment was wide open and they went in to secure the premises and prevent evidence from being destroyed. Bovenzi also testified that the television was on, showing the security camera's view of the front door of the apartment building. No one was in appellant's apartment at the time.
 {¶ 3} After obtaining a warrant and searching appellant's apartment, police seized the buy money, an additional $16,190 and additional drugs, all from appellant's bedroom. Specifically, police found $3,500 of the buy money in a sock in a dresser drawer; $16,190 in a pants pocket in the closet; and approximately one ounce of powder cocaine in a bag inside a slipper underneath appellant's bed. It is undisputed that appellant was not in his apartment during the time frame in question.
 {¶ 4} On April 3, 2003, a Cuyahoga County grand jury indicted appellant on one count of possession of drugs, in violation of R.C. 2925.11, a third-degree felony; one count of drug trafficking, in violation of R.C. 2925.03(A)(1), a second-degree felony; and one count of possessing criminal tools, in violation of R.C. 2923.24, a fifth-degree felony. On September 8, 2004, a jury convicted appellant of one count of possession of drugs. On October 1, 2004, the court sentenced appellant to one year imprisonment.
 II. {¶ 5} We begin our discussion with appellant's second assignment of error, as it is dispositive of his case. In his second assignment of error, appellant argues that "the trial court erred in denying appellant's motion for judgment of acquittal pursuant to Rule 29 Ohio Rules of Criminal Procedure where the evidence presented at trial was wholly insufficient to prove appellant possessed cocaine."
 {¶ 6} Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 7} R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." In the instant case, cocaine and two stashes of money were found in appellant's apartment when he was not present. Appellant was found guilty of possession of drugs and was acquitted of the charges relating to the money. It was also established that appellant, his girlfriend, Harry and Griggs had access to appellant's apartment on January 14, 2003. The state offered no evidence linking appellant to the cocaine, other than that he was the lessee of the apartment where it was found.
 {¶ 8} Under Ohio law, possession may be constructive or actual. The Ohio Supreme Court has defined constructive possession as follows:
"Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. * * * However, the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession.
It must also be shown that the person was conscious of thepresence of the object. Without this element one could be found to be in illegal possession of stolen property surreptitiously placed in or upon his property by another."
State v. Hankerson (1982), 70 Ohio St.2d 87, 91 (emphasis added).
 {¶ 9} In Hankerson, the issue was whether the property owners had possession of stolen items found in their minor son's bedroom. The state put forth the following evidence to establish constructive possession: "the speakers and turntable were not hidden, were in plain view in [the son's] room, were large and bulky, and were connected and operable * * *." Id. at 91. Witnesses also testified that the son's bedroom "contained more than the usual amount of electronic equipment" and that the homeowners knew "that various neighbors believed their son to be a neighborhood thief." Id. Furthermore, Mr. Hankerson admitted his son could not afford the items in question and the first thing Mrs. Hankerson said to police when they walked into her son's room was, "We bought this stuff for our son and you can't prove we didn't," thus indicating her knowledge that the property was considered suspect by the police. Id. at 93.
 {¶ 10} In the instant case, the court found the following when denying appellant's motion for acquittal:
"It's a close call, I will give you that much. It really is. My decision is whether it goes to the jury or not. * * * Because the law says that the trier of fact cannot infer [sic] possession solely from that evidence that the person occupied the premises. * * *
"I will tell you what got the state through this in my mind. It was the location * * * of the drugs, and the amount which shows more than mere tenancy in that area. But the jury can make whatever, you know, they can draw whatever inferences they want as far as that's concerned. And they don't have to draw any inferences as far as his connection to it. The fact that * * * the drugs are found under a bed in a slipper."[2]
 {¶ 11} The case at bar presents us with reasoning in direct opposition to the reasoning used in Hankerson. In Hankerson,
the court concluded that the appellants knew about the contraband because it was in plain view within their home. In the instant case, the court concluded that appellant knew about the cocaine because it was concealed in a slipper under his bed. According to the record, up to four people had access to appellant's apartment that day: appellant, his girlfriend, Harry and Griggs. Most of the buy money that the law enforcement officers supplied to CI was found in appellant's dresser after the transaction despite the fact that appellant was nowhere on the scene. Harry had the money with him when he went into the apartment building. When the police approached appellant's apartment, the door was wide open. Minutes before, police arrested Griggs in appellant's parking lot with keys to appellant's apartment around his neck. Most importantly, after a careful combing of the record in this case, there is no evidence, direct or circumstantial, that shows appellant was conscious of the drugs found underneath his bed. No other drugs, traces or residue were found in appellant's apartment. No paraphernalia or criminal tools were recovered either. At trial, Harry, who testified for the state, said that appellant had nothing to do with the drug transaction. See Tr. at 406, 423, 428-30, 437. When the police asked Harry where he got the drugs, Harry implicated Griggs, who was staying at appellant's apartment. See Tr. at 446, 467.
 {¶ 12} Given this, we conclude that there was insufficient evidence in the record to establish the essential elements of possession of drugs beyond a reasonable doubt. Appellant's second assignment of error has merit and is sustained.
 {¶ 13} Pursuant to App.R. 12(A)(1)(c), appellant's assignment of errors one and three are made moot by our disposition of assignment of error two. Accordingly, we reverse appellant's conviction and vacate his sentence as being based on insufficient evidence. We further remand this matter to the trial court with instructions to enter a verdict of not guilty.
 {¶ 14} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and McMonagle, J., concur.
[1] There is conflicting evidence in the record as to whether Harry resided at this apartment building. However, since it is not relevant to the issues in this appeal, we will assume he did.
[2] Tr. at 867-69.