## The STATE of Ohio, Appellee,

### v.

## CHAMBERS, Appellant.

[Cite as *State v. Chambers,* 179 Ohio App.3d 770, 2008-Ohio-6973.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 07 BE 44.

Decided Dec. 17, 2008.

Christopher Berhalter, Belmont County Prosecuting Attorney, and Robert W. Quirk, Assistant Prosecuting Attorney, for appellee.

Thomas M. Ryncarz, for appellant.

---

WAITE, Judge.

{¶ 1} Appellant, James Jason Chambers, was convicted in the Belmont County Court, Eastern Division, for possession of parts of a whitetail deer without a proper tag, seal, or certificate of ownership. Appellant contends that his bench trial verdict is against the sufficiency and manifest weight of the evidence. Although there is some conflicting evidence in this case, the state established that whitetail deer parts were found at appellant's residence, other people who lived at the residence did not hunt, appellant had been a hunter (legally and illegally) in the past, and appellant knew about the deer bones under his porch. The trial court's judgment is supported by the record and is hereby affirmed.

BACKGROUND

{¶ 2} On May 30, 2007, Ohio Division of Wildlife investigator and State Wildlife Officer Richard Cooley assisted in searching the residence located at 53201 Cats Run Road, Powhattan Point, Ohio, in Belmont County, pursuant to a search warrant. Cooley was investigating wildlife violations. During the search, he found bones underneath the front steps leading into the house. He identified the bones as whitetail deer bones from the rear quarters of a deer. Cooley questioned appellant concerning the bones and asked whether appellant had a license or tag for the deer parts. Appellant admitted that the bones were deer bones and that he had no license or tag for the deer. It was Cooley's opinion that the deer bones had been stripped of the meat and then discarded.

{¶ 3} Appellant agreed to waive his Miranda rights and to complete a written statement regarding the deer parts. In his statement, he acknowledged that he had hunted deer in the past and that he helped others hunt deer on his property. He also admitted that he had previously hunted turkeys with his dog without having proper tags and that he had no tags for the deer bones found under his porch. Cooley issued a citation to appellant for possessing parts of a whitetail deer without a tag, seal, or certificate of ownership, in violation of Ohio Adm.Code 1501:31–15–11 and R.C. 1531.02, a third-degree misdemeanor.

{¶ 4} The court appointed counsel to represent appellant. A pretrial hearing was begun on August 2, 2007, and continued to August 23. Because appellant failed to appear, the pretrial hearing was continued to August 30, 2007. A bench trial was scheduled for September 20, 2007.

{¶ 5} At trial, the state called Richard Cooley to testify. Cooley told the court that he had 31 years of experience with the Division of Wildlife. He described finding the deer bones and testified about his conversation with appellant. Appellant told Cooley that he knew that there were deer bones under his porch and readily admitted that he had no license or tag for the deer parts.

{¶ 6} Appellant testified at trial that he and his girlfriend lived on a 100–acre property owned by his grandmother. Appellant testified that he had three dogs on the property: a large German Shepherd, a large mixed-breed adult dog, and a mixed-breed puppy. Appellant stated that the dogs were not tied up and that they roamed freely on the property. He said that he never saw his dogs dragging things onto his property, but he speculated that it could have happened. He testified that he did not put the deer bones underneath his steps, nor did his girlfriend, who "wouldn't touch nothing like that." He testified that his girlfriend did not hunt. He stated that he had hunted in the past but had not hunted since 2002. He was questioned about his criminal record, and he testified that he had a felony conviction for domestic violence and was released from prison in 2003.

{¶ 7} Appellant's girlfriend (whose name is not in the record) testified, along with one of appellant's friends, John Sims. Appellant's girlfriend stated that she owned the house that was on the property. She testified that the dogs regularly brought dead animals from the woods to the house, but that she did not see them with the deer bones that were found under the porch. She testified that she did not hunt.

{¶ 8} Sims testified that he spent eight to 10 nights per month at the house, mostly on the weekends. He said that he saw the dogs bring rabbits, ground-hogs, and birds to the house and that he saw one of the dogs chewing on a deer leg in the driveway leading to the house. He described himself as a good friend of appellant's. He also testified that he did not hunt.

{¶ 9} The court found appellant guilty and filed its judgment the same day. The court imposed a 14–day suspended jail sentence, a $500 fine, and court costs, along with one year of probation. This timely appeal followed on October 2, 2007.

## ASSIGNMENT OF ERROR

{¶ 10} "The trial court committed error by finding the appellant guilty because the verdict was not supported by sufficient credible evidence and the verdict was against the manifest weight of the evidence."

{¶ 11} Appellant is challenging both the sufficiency of the evidence and the manifest weight of evidence in this case. "A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 31. To determine whether sufficient evidence exists to support a conviction, the reviewing court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 12} Even though a court of review may find that a verdict is supported by sufficient evidence, it may still be found to be against the manifest weight of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Robinson* (1955), 162 Ohio St. 486, 487, 55 O.O. 388, 124 N.E.2d 148. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but

depends on its *effect in inducing belief.*'" (Emphasis sic.) Id., quoting Black's Law Dictionary (6th Ed.1990) 1594.

{¶ 13} When reviewing a trial court's decision on the basis that the verdict was against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. Id.

{¶ 14} " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 15} Appellant was charged with violating both R.C. 1531.02 and Ohio Adm.Code 1501:31–15–11. R.C. 1531.02 states:

{¶ 16} "The ownership of and the title to all wild animals in this state, not legally confined or held by private ownership legally acquired, is in the state, which holds such title in trust for the benefit of all the people. Individual possession shall be obtained only in accordance with the Revised Code or division rules. *No person at any time of the year shall take in any manner or possess any number or quantity of wild animals, except wild animals that the Revised Code or division rules permit to be taken, hunted, killed, or had in possession, and only at the time and place and in the manner that the Revised Code or division rules prescribe.* No person shall buy, sell, or offer any part of wild animals for sale, or transport any part of wild animals, except as permitted by the Revised Code or division rules. No person shall possess or transport a wild animal that has been taken or possessed unlawfully outside the state.

{¶ 17} *"A person doing anything prohibited or neglecting to do anything required by this chapter or Chapter 1533. of the Revised Code or contrary to any division rule violates this section. A person who counsels, aids, shields, or harbors an offender under those chapters or any division rule, or who knowingly shares in the proceeds of such a violation, or receives or possesses any wild animal in violation of the Revised Code or division rule, violates this section."* (Emphasis added.)

{¶ 18} R.C. 1531.99 establishes the penalty for violating R.C. 1531.02 (and by extension, the penalty for violation of any Division of Wildlife administrative rule implementing R.C. 1531.02):

{¶ 19} "(B) Whoever violates section 1531.02 of the Revised Code concerning the taking or possession of deer * * * is guilty of a misdemeanor of the third degree on a first offense; on each subsequent offense, that person is guilty of a misdemeanor of the first degree."

{¶ 20} The applicable version of Ohio Adm.Code 1501:31–15–11(K) states:

{¶ 21} "(K) It shall be unlawful for any person not possessing a deer permit * * * to hunt, take, or possess a deer. * * *"

{¶ 22} Ohio Adm.Code 1501:31–15–11(LL) states:

{¶ 23} "(LL) It shall be unlawful at any time to possess a deer or deer parts that were taken in violation of any division rule or the Revised Code."

{¶ 24} "Possession" is defined in R.C. 1531.01(H): " 'Possession' means both actual and constructive possession and any control of things referred to."

{¶ 25} "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus.

{¶ 26} "Dominion and control may be proven by circumstantial evidence alone." *State v. Trembly* (2000), 137 Ohio App.3d 134, 141, 738 N.E.2d 93.

{¶ 27} The evidence shows that appellant lived on the property, used to hunt on the property, and helped others hunt on the property. The evidence also shows that the bones were found under the front steps of the house located on the property. Appellant's theory that his dogs found the bones in the woods and dragged them to the front steps is not particularly plausible, given that no teeth marks were found on the bones, according to Wildlife Officer Cooley. The deer parts were not buried or hidden, but were lying in open view, clearly visible under the front steps, thus establishing constructive possession. Furthermore, former Ohio Adm.Code 1501:31–15–11(M) states: "It shall be unlawful for any person to hunt, or take, deer by the aid of an unleashed dog." Thus, the fact that appellant had unleashed dogs on his property could be construed as further evidence of guilt rather than evidence that could exonerate him.

{¶ 28} The fact that two, or possibly three, people resided at the property also does not negate appellant's constructive possession. Appellant's own testimony, along with that of his girlfriend, effectively eliminated her as a possible source of the deer parts. Appellant's friend Mr. Sims also said that he did not hunt, and he was shown to be only a visitor to the house and had no ownership interest in it or the surrounding property.

{¶ 29} It is clear from the record that the trier of fact, which in this case was the trial judge, did not believe appellant's testimony. Appellant's credibility

as to whether he currently owned guns or had recently hunted was brought into question after he admitted that he was a convicted felon. In Ohio, a person convicted of a felony crime of violence is prohibited from possessing or using a firearm, unless the statutory disability is removed by proper judicial procedures. R.C. 2923.13(A)(2). Due to appellant's felony domestic-violence conviction, and the accompanying prohibition from owning and using firearms, the trial judge appears to have been skeptical about appellant's testimony that he had not hunted or owned firearms since 2002. The trial judge stated, "I understand his claim but I am not convinced of that—he has other reasons to deny it." In other words, appellant had reasons to deny owning or using guns for hunting because it would have been a crime for him to do so as a convicted felon. The credibility of witnesses is determined by the trier of fact. In this case, the trial judge simply did not believe crucial aspects of appellant's testimony. The trier of fact is free to believe all, part, or none of the testimony of any witness. *State v. Long* (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1.

{¶ 30} The evidence established that appellant constructively possessed deer parts at his home, without proper tags, and his alternative theory as to how the deer bones appeared on his property was not particularly credible or sufficient as a defense to the charge. Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

DeGenaro, P.J., and Vukovich, J., concur.