[Cite as *State v. Matthews*, 2014-Ohio-1214.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| FIONN LAMAR MATTHEWS | : | Case No. 13CA45 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Richland County
                                    Court of Common Pleas, Case No.
                                    2013-CR-197



JUDGMENT:                           Affirmed



DATE OF JUDGMENT:                   March 14, 2014



APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

JAMES J. MAYER, JR.                         RANDALL E. FRY
Prosecuting Attorney                        10 West Newlon Place
                                            Mansfield, OH 44902
By: JILL M. COCHRAN
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

*Baldwin, J.*

{¶1} Appellant Fionn Matthews appeals a judgment of the Richland County Common Pleas Court convicting him of aiding and abetting tampering with evidence (R.C. 2921.12(A)(1)) and having a weapon under disability (R.C. 2923.13(A)(3)).[1] Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2} At 10:48 p.m. on June 4, 2012, officers from the Richland County Sheriff's Department and the Ohio State Highway Patrol were dispatched to 3246 O'Possum Run Road in Mansfield for a fight between people at the home, and a later report of shots fired. The home belonged to Tonya and Bart Stecher, Sr.

{¶3} Bart Stecher, Sr., was not at home that night. Tonya was home with her son B.S. Her son's friends T.G., P.D. and P.M. were visiting that night. Appellant and Paula Timko came to the home. B.S. had not seen either of them before that evening. Tonya took Timko and appellant into her bedroom, where there was a gun safe. Several minutes later, Tonya went to the basement and Timko went into the restroom.

{¶4} While the boys were sitting around the kitchen table, B.S. heard the handle of the door of the gun safe click. The boys then saw appellant leave the bedroom, headed for the front door. Appellant appeared to have something in his hand, half in his pocket. Appellant was acting suspiciously and behaved as if he was hiding something, and P.D. believed he saw the butt of a gun. The boys suggested that B.S. check the gun safe.

---

[1] Appellant was also convicted of failure to appear on a P.R. bond, assault on a peace officer, illegal conveyance of a drug of abuse into the grounds of a detention facility, resisting arrest, possession of cocaine, falsification, and disrupting public service. The charges arose from three separate events. Appellant only challenges the convictions stemming from one of these events, which led to the convictions for tampering with evidence and having a weapon under disability.

{¶5} Appellant left the house through the front door and went outside to sit in his vehicle. B.S. checked the gun safe and discovered that a .357 magnum revolver was missing. B.S. told his mom that he thought appellant had stolen the gun. Tonya then confronted Timko, who was trying to leave the house. One of the boys blocked Timko's exit route. Timko was wearing a tight tank top and tight denim Capri pants, and someone patted her down to look for the missing gun. Timko then left through the garage door.

{¶6} As Timko tried to leave the house to return to appellant's car, a fight started between Tonya and Timko. At one point, Timko had her hands in Tonya's hair and was smashing Tonya's head against the pavement, pulling out a clump of Tonya's hair in the process. While appellant remained in the car, the boys broke up the fight. Timko ran to the car, leaving her purse behind. The purse was the size of a wallet, and not large enough to conceal a gun.

{¶7} Tonya told her son to get a shotgun. When B.S. came outside with a shotgun, Tonya told him to fire on appellant's car. B.S. fired a shot, attempting to disable the vehicle. The bullet traveled through the back passenger door on the driver's side, through the driver's seat and into appellant's back.

{¶8} Timko called 911 from the car to report that appellant had been shot. In the call she could be heard telling appellant to pull over to the side of the road to "dump the pistol baby." Trooper Tyler Carr caught up to appellant's vehicle about half a mile from the Stecher residence. Appellant's car was stopped in the middle of the road. As Trooper Carr approached the car, he noticed that the passenger side door was open and Timko was standing in the ditch next to the road.

{¶9}    Appellant exited the car and approached Carr's cruiser, ignoring orders to stop and show his hands.  Trooper Steven Gilliam arrived on the scene and saw both appellant and Timko in front of Carr's cruiser.   The officers were concerned that there might be a gun in the area because the call complained of shots fired, and because both Timko and appellant were difficult to control and not responding to orders.  Both Timko and appellant denied having a gun.  Officers searched Timko and appellant and the vehicle, but did not find a gun.  They found a cell phone belonging to P.M. in the vehicle.

{¶10}   Appellant was transported to the hospital.   About thirty minutes later, police found the .357 Magnum taken from the Stecher home in the ditch near where Timko had been standing.   At the hospital, appellant gave a recorded statement, claiming he was at Tonya's house to discuss trading a gun for some pills.   He denied that he stole the handgun and claimed that Timko did not take the gun.   He told police that Tonya patted Timko down, and the fight started because Tonya did not find the gun on Timko and became angry.

{¶11}   Appellant was charged with two counts of robbery, tampering with evidence, having a weapon under disability and theft for the events stemming from June 4, 2012.  The case proceeded to jury trial in the Richland County Common Pleas Court, along with charges from two separate incidents.

{¶12}   Appellant testified at trial that he worked as a small time drug dealer, selling crack and marijuana.  He testified that he went to Timko's house on June 4 to sell her some drugs.  While there, Tonya contacted Timko to buy $50.00 worth of crack cocaine.  Appellant had never met Tonya before, but he agreed to go to Tonya's house.

Appellant told Tonya his name was "Cash."  Appellant sold her $50.00 worth of crack cocaine and stayed at the house while Timko and Tonya smoked the crack.  Appellant and Timko then left.

{¶13}  Appellant testified that later that day, Timko received a text from Tonya wanting more crack.  Tonya said she didn't have money but they could wait until 12:30 when her money "hit the bank," or they could arrange a trade.  Appellant and Timko returned to the Stecher house.  Tonya opened the gun safe and showed them the .357 Magnum revolver, but claimed she couldn't trade it because it was her husband's gun.  She offered to trade a shotgun, which appellant grabbed and looked at.  They agreed to trade the shotgun for $70.00 worth of crack cocaine.  While Tonya and Timko smoked the crack, appellant made a phone call and arranged to sell the shotgun for $200.00.  Tonya asked for more crack in exchange for shells for the gun, and went down to the basement to get the shells.  Appellant claimed that Tonya was going to hand the gun and shells out the window to him so he would not have to walk past the boys carrying the gun.  Appellant went outside and waited, but Tonya did not put the gun out the window.  As he walked toward his car, Tonya pointed a shotgun at him and accused him of stealing a gun.  While Tonya and Timko were fighting, appellant returned to his car.  He testified that the boys came out of the house, two carrying shotguns and one carrying a crossbow.  Appellant claimed that one of the boys hit Timko in the head with the butt of a shotgun.  Finally, appellant yelled that the police were coming and the fight ended.

{¶14}  Appellant was shot as he was pulling out of the driveway.  He testified that when he saw the trooper, he attempted to flag the officers down because he had been

shot. At this point he testified that Timko started yelling at him to pull over because she had to dump the gun. He denied any prior knowledge of Timko's possession of the gun.

{¶15} Appellant was convicted of aiding and abetting tampering with evidence and having a weapon under disability for the events of June 4, 2012, and acquitted of both counts of robbery and of theft. Appellant was also convicted of failure to appear on a P.R. bond, assault on a peace officer, illegal conveyance of a drug of abuse into the grounds of a detention facility, resisting arrest, possession of cocaine, falsification, and disrupting public service. He was sentenced to a total sentence of six years incarceration. He assigns two errors on appeal:

{¶16} "I. THE VERDICT OF GUILTY AGAINST THE APPELLANT FOR COMMITTING THE CRIME OF 'HAVING WEAPONS WHILE UNDER DISABILITY' WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "II. THE VERDICT OF GUILTY AGAINST THE APPELLANT FOR 'AIDING AND ABETTING ANOTHER' IN COMMITTING THE CRIME OF 'TAMPERING WITH EVIDENCE' WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶18} In his first assignment of error, appellant argues that the verdict of guilty of the crime of having a weapon while under disability was against the manifest weight of the evidence. He argues there is no evidence that he possessed the .357 Magnum revolver, and that the evidence demonstrates that he only picked up the shotgun briefly and put it back down.

{¶19} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire

record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶20}   Appellant was convicted of having a weapon under disability as defined by R.C. 2923.13(A)(3):

{¶21}   "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

{¶22}   "(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶23}   Appellant argues that because the jury found him not guilty of theft of the revolver, the verdict must be based on the shotgun.  He argues that the only testimony concerning his handling of the shotgun was his own, and he testified that he picked it up, looked at it, and immediately put it back down.

{¶24}   Possession may be actual or constructive. *State v. Haynes*, 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787 (1971); *State v. Hankerson*, 70 Ohio St.2d 87, 24

O.O.3d 155, 434 N.E.2d 1362 (1982), syllabus. Constructive possession will be established where the accused was able to exercise dominion or control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 373–374, 348 N.E.2d 351, 360–361 (1976).

{¶25} Although appellant may have only physically handled the shotgun for a short time, he admitted that he gave Tonya seventy dollars worth of crack cocaine in exchange for the shotgun, which she smoked while he remained at the house. He further admitted that he contacted someone who agreed to purchase the gun for two hundred dollars, and that he intended to take the gun with him and sell it to this person. The jury's finding that appellant had acquired the shotgun and possessed it within the meaning of 2923.13(A)(3) is not against the manifest weight of the evidence.

{¶26} Although not separately assigned as error, appellant argues that the jury was not instructed on the definition of "had" as used in the statute. "Had" is a term of common usage, requiring no further definition. *State v. Dodson*, 10th Dist. Franklin No. 10AP-603, 2011-Ohio-1092, ¶15; citing *State v. Curtis*, 3rd Dist. Marion No. 9-02-11, 2002-Ohio-5409, ¶21.

{¶27} The first assignment of error is overruled.

II.

{¶28} Appellant argues that his conviction for aiding and abetting Paula Timko in the crime of tampering with evidence is against the manifest weight of the evidence. He argues that he did not know Timko stole the gun and that he stopped the car to get assistance because he was shot, not to allow Timko to throw the gun in the ditch.

{¶29} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶30} Tampering with evidence is defined by R.C. 2921.12(A)(1):

{¶31} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶32} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶33} Appellant claims he did not know Timko had the stolen revolver and that he stopped the car to get assistance because he had been shot. However, during the 911 call Timko can be heard telling appellant to pull over so she can ditch the gun. At the time Trooper Carr came upon appellant's vehicle, it was already stopped in the roadway and Paula Timko was out of the car, standing in the ditch where the revolver was later found by police. Further, appellant testified on cross-examination:

{¶34} "Q. –you testified on direct examination that the reason you got shot was because she stole that gun?

{¶35} "A. Yes.

{¶36} "Q. We agree with that?

{¶37} "A. Yes.

{¶38} "Q. And we can agree that you never said that to either one of the troopers at the scene?

{¶39} "A. Right.

{¶40} "Q. You could have went back there and said, look, I got shot, and that lady over there has a stolen gun that she just got done dumping in the ditch, you could have done that, couldn't you?

{¶41} "A. Yes.

{¶42} "Q. And if you had did that, that would have been the truth, wouldn't it?

{¶43} "A. Yes." Tr. 368.

{¶44} From the evidence presented, the jury could have concluded that appellant was aware Timko had the stolen gun in the car and that he helped her conceal the gun by stopping the car to allow her to throw the gun in the ditch before the police arrived on the scene in response to the 911 call.

{¶45} The second assignment of error is overruled.

{¶46}   The judgment of the Richland County Common Pleas Court is affirmed. Costs are assessed to appellant.


By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.